MEMORANDUM *
Klamath-Siskiyou Wildlands Center (“KS Wild”) brought this action in the district court seeking declaratory and in-junctive relief against the United States Forest Service’s planned restoration of four meadow sites in the Klamath-Siski-you National Forest (the “Restoration Project”) to their pre-1940s conditions. Prior to approving the Restoration Project in its current form in 1997, the Forest Service completed an Environmental Assessment (“EA”) in 1996 and a Supplemental Environmental Assessment (“SEA”) in 1997. KS Wild claims that the current Restoration Project violates the National Environmental Policy Act (“NEPA”), 42 U.S.C. § § 4321 et seq., because the Forest Service has failed to take the required “hard look” at “new circumstances [and] information” since 1997 to determine whether such developments are “significant” and require a new SEA. See 40 C.F.R. § 1502.9(c)(1)(h); Marsh v. Or. Nat. Res. Council, 490 U.S. 360, 373-74, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989) (requiring agencies to take a “hard look” at new information to determine whether a supplemental Environmental Impact Statement (“EIS”) must be prepared); Price Rd. Neighborhood Ass’n v. U.S. Dep’t of Transp., 113 F.3d 1505, 1509 (9th Cir.1997) (“hard look” standard also applies to SEAs). The district court granted summary judgment in favor of the Forest Service and denied KS Wild’s request for an *19 injunction. We have jurisdiction under 28 U.S.C. § 1291 and we affirm.
We review de novo the district court’s grant of summary judgment, Native Ecosystems Council v. USFS, 428 F.3d 1233, 1238 (9th Cir.2005), and the denial of a preliminary injunction for an abuse of discretion, Earth Island Inst. v. USFS, 442 F.3d 1147, 1156 (9th Cir.2006). “Agency decisions that allegedly violate NEPA ... are reviewed under the Administrative Procedure Act (“APA”), and may be set aside if they are ‘arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.’ ” Klamath Siskiyou Wildlands Ctr. v. Boody, 468 F.3d 549, 554 (9th Cir.2006) (quoting 5 U.S.C. § 706(2)(A)).
In its Final Environmental Impact Statement on the Biscuit Fire Recovery Project—which was completed in 2004— and a later field survey, the Forest Service sufficiently considered the cumulative impact of the Restoration Project and the Biscuit Fire of 2002 on (1) the overall loss of habitat for the Northern Spotted Owl; (2)the potential for noxious weed infestation; and (3) the loss of recreational opportunities in the area. See Idaho Sporting Cong. v. Thomas, 137 F.3d 1146, 1152 (9th Cir.1998) (holding that when the cumulative impact of multiple agency actions is analyzed in an EA or EIS in connection with one of the actions, no supplemental EA or EIS is needed in connection with the remaining actions). We conclude that the Forest Service’s decision not to complete a new SEA assessing these changed circumstances was not arbitrary or capricious.
The Forest Service has also sufficiently considered the environmental impact of the Restoration Project in light of newly discovered threats to the Northern Spotted Owl—i.e., West Nile Virus, Sudden Oak Death and resource competition caused by the Barred Owl—in the project reviews it conducted in 2005, 2007 and, most recently, 2008.[1] See Friends of the Clearwater v. Dombeck, 222 F.3d 552, 560 (9th Cir.2000) (holding that, in actions seeking supplemental environmental studies, “review is not limited to the record as it existed at any single point in time, because there is no final agency action to demarcate the limits of the record.”). We conclude that the Forest Service’s decision not to complete a new SEA assessing such new information was not arbitrary or capricious.
KS Wild has not raised a substantial question as to whether the area subject to logging under the Restoration Project has developed into “suitable habitat” for the Northern Spotted Owl since the Forest Service completed the operative SEA in 1997.[2] “[Suitable habitat] generally refers only to the nesting, roosting, and occasionally the foraging portion of the habitat used by northern spotted owls,” but not to the portion used only for “dispersal” purposes. Endangered and Threatened Wildlife and Plants, Determination of Critical Habitat for the Northern Spotted Owl, 57 Fed.Reg. 1,796, 1,797 *20 (Jan. 15, 1992). As of 1996, the Restoration Project would not have removed or disturbed any forest area then qualifying as “suitable habitat.” Although some of the encroaching trees, taken in isolation, may now present some of the characteristics commonly associated with the Northern Spotted Owl’s nesting, roosting and foraging habitat, there is no indication in the administrative record that any of the areas encompassed by the Restoration Project satisfy all the requirements set forth in the applicable definition of such habitat. For instance, it is true that some of the trees that will be logged under the timber sale may be greater than 21 inches in diameter and that canopy closure may reach 40% in some areas. Yet, “[n]est-ing — roosting habitat requires stands dominated by trees greater than 21 inches in diameter and more than 40 percent canopy closure (Zobel et al.200S).” FEIS, Biscuit Fire Recovery Project at III — 170 (emphasis added). KS Wild has pointed to no evidence — and we could find none — showing that such mature trees and thick canopy cover are actually dominant anywhere within the Restoration Project area. On this record, we conclude that the restoration area contains, at most, some portions of “dispersal” habitat. In turn, because the 1996 EA, the 1997 SEA and the biological re-evaluation conducted by the Forest Service in 2004 fully addressed the impact of the Restoration Project under this habitat assumption, the Forest Service’s decision not to complete a new SEA was not arbitrary or capricious.
Under either of the two tests for injunc-tive relief adopted in this circuit, KS Wild must show at least some probability of success on the merits. See Lands Council v. McNair, 537 F.3d 981, 1003-04 (9th Cir.2008) (en banc). For the reasons set forth in this memorandum disposition, KS Wild has failed to make such a showing. We accordingly deny its request for an injunction.
For the foregoing reasons, the judgment of the district court is AFFIRMED and the appellants’ injunction request is DENIED.

 This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

. After this case was submitted, the Forest Service submitted—and we received—a Notice of Completion of Supplemental Information Report on the Final Recovery Plan for the Northern Spotted Owl, which was completed this month. The 2008 Supplemental Information Report does not contain anything to change our analysis or affect our disposition of this case.

. Because we reject KS Wild's argument on the merits, we need not assess the Forest Service’s contention that KS Wild has waived it by not presenting it in its current form before the district court or in its opening brief.